JAMES H. BROWN *vs.* THE SOLDIERS' BONUS BOARD.

MARCH 21, 1922.

PRESENT:  Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

(1)  *Soldiers' Bonus.*

Petitioner who was a member of the National Guard of the State April 6, 1917, was mustered into the Federal service by signing a Muster Roll, and was honorably discharged May 11, 1917.  As a member of the National Guard he performed military service within the limits of the State in the nature of police duty.

*Held,* that the Federal service performed by petitioner was not included within the provisions of the Bonus Act, Cap. 1832, Pub. Laws, 1920.

CERTIORARI.   Heard and writ dismissed.

STEARNS, J.   The proceeding is by writ of *certiorari*.

Petitioner claims that he is entitled to receive a soldier's bonus under the provisions of Pub. Laws, 1920, Chap. 1832. His claim was denied by the Soldiers' Bonus Board and

petitioner alleges that this action of the board was erroneous. The facts are not in dispute and are substantially as follows:

In February, 1917, the Governor of this State, acting on the request of the United States Government, communicated to him by the commanding general, Eastern Department, Governor's Island, N. Y., ordered protection to be furnished by the National Guard over certain railroad bridges in this State.

On April 2, 1917, the Governor (special orders No. 66) issued an order a part of which is as follows: "IV. Complying with telegraphic instructions from Headquarters, Eastern Department this date, the 2d, 5th, 12th, and 15th companies organized as a battalion, will assembly at their respective stations today for initial muster into United States service," under command of Major Johnson, R. I. Coast Artillery, N. G. to assist in guarding public utilities. In response to this order petitioner, who was a member of the National Guard, reported for duty and was stationed at the State Armory. His duty required him to visit the several detachments of the battalion which were on guard at reservoirs and certain bridges and to supply them with rations. On the 6th of April war was declared with Germany. On that day petitioner was mustered into the Federal service by signing a Muster Roll, which was also signed by Col. Blake, a regular army officer and the National Guard instructor of this State, and also by a National Guard officer. May 11, 1917, petitioner was honorably discharged "By reason of having dependents, in accordance with Bulletin 36, 1917, Eastern Department." This discharge is made out in the usual form of the State of Rhode Island National Guard discharge, on the regular blank provided by the State for such purpose and is executed by Major Johnson, commanding Provisional Battalion R. I. Coast Artillery. Subsequently, at the request of the petitioner, this discharge paper was sent to the War Department in Washington. The Adjutant General of the U. S. Army added thereto the following statement:

"WAR DEPARTMENT,                                    Oct. 14, 1921.

THE ADJUTANT GENERAL'S OFFICE.

The records of this office show that James E. Brown, Sergeant, Q. M. Corps, attached to Provisional Battalion, Coast Artillery, National Guard, State of Rhode Island, enlisted June 14, 1916, reported for Federal Service April 2, 1917, under the call of the President, and was honorably discharged from the Federal Service May 11, 1917.

J. ERWIN<br>Adjutant General."

Petitioner has received a bonus from the Federal Government under the Federal law.    (Fed. Stat. Ann. 1919, Supp. p. 368, Sec. 1406.)    This fact however has no particular relation to the question before us (*Bannister* v. *Soldiers' Bonus Board,* 43 R. I. 346), which is to be decided by reference to the provisions of the State act, Chapter 1832.

Section 1, Chapter 1832, is as follows: "In recognition of the patriotic services of residents of the state who served in the army and navy of the United States during the war with Germany, provision is hereby made for the payment of a soldiers' bonus and for the creation of a board to be known as The Soldiers' Bonus Board, with full and final authority to determine what residents of the state are entitled to payments under the provisions of this act."

Section 2 provides for the payment of the bonus to each commissioned officer and enlisted man "duly recognized as such by the war or navy department, who was mustered into the federal service and reported for active duty on or after April 6, 1917, and prior to November 11, 1918," . . . "*and, provided further,* that no benefits shall accrue under this act because of the service of any person appointed to or inducted into the military or naval forces who had not reported for duty on or prior to November 11, 1918, at the military cantonment or the naval station to which he was ordered."

Chapter 1832 became a law January 9, 1920, more than a year after the armistice and the cessation of hostilities. At that time the facts in regard to the various classes of military service which had been rendered to the Federal Government were well known to the legislature which was then legislating in regard to what had been done in the past. Not every person who had performed military service for the Federal Government within the prescribed period was entitled to receive a bonus.    Sections 2 and 4 limit the class in certain specified respects.    Although the Bonus Board does not now urge its right to determine the question with full and final authority as provided in Section 1, yet the attempt by the legislature to confer such power on the board seems fairly to indicate an intention on the part of the legislature to restrict the payment of a bonus to such persons as clearly come within the terms of the act.    The bonus is a gift by the State to certain beneficiaries who are designated by the act.    The scope of the act is defined and restricted by Section 1 to residents of the State who served in the army and navy of the United States during the war with Germany.    What constituted that army?    The Selective Service act, or as it is often called the Draft act, was approved May 18, 1917.    Speaking of this act the Secretary of War in his report to the President (War Department Annual Reports 1917, p. 12) says:    "The Act of May 18, entitled 'An act to authorize the President to increase temporarily the Military Establishment of the U. S.' looked to three sources for the army which it created:    1.  The regular army. 2.  The National Guard.    3.  A national army raised by the draft, to be summoned by the President at such time as he should determine wise."

July 3, 1917, the President by proclamation called into the Federal service and drafted the National Guard of the several states.    Later the national army was assembled under the Selective Service act.    The army of the United States for the war with Germany was thus created and established by act of Congress to accomplish a particular

purpose, by a new organization and, as stated by the Secretary of War, the act created but one army, selected by three processes. Petitioner belonged to neither branch of this army, which had not come into existence at the time he performed his military service. Hostilities on land did not begin until many months after the time of the creation of the new army. Having dependents, in pursuance of the policy of the government with reference to the National Guard and the national army, petitioner was not called upon for service in the new army. As a member of the National Guard he performed military service within the limits of the State in the nature of police duty, first by order of the State and later by order of the President. Assuming that petitioner was in the Federal military service after April 6th, he was thus engaged as a member of the National Guard. In his discharge it is expressly stated that he is "honorably discharged from the National Guard of the United States and the State of Rhode Island." As a member of the National Guard he was subject to perform military duty for the State and also in certain emergencies for the Federal Government. The Federal service he performed was not included in the provisions of the Bonus act. We find that petitioner's claim was properly disallowed.

The writ of *certiorari* is dismissed.

*Edward H. Ziegler and Charles A. Kelley,* both of Providence, for petitioner.

*Herbert A. Rice, Attorney General,* for respondent.